**In re the MARRIAGE OF Darren FOGLE and Michelle Fogle.**

**Upon the Petition of Darren Fogle, Appellant,**

**And Concerning Michelle Fogle, Appellee.**

**No. 92–562.**

Court of Appeals of Iowa.

Feb. 2, 1993.

Robert W. Conrad, Knoxville, and Michael P. Brice, Oskaloosa, for appellant.

Bert A. Bandstra, Knoxville, for appellee.

Heard by OXBERGER, C.J., and HAYDEN and HABHAB, JJ.

OXBERGER, Chief Judge.

On December 16, 1989, Darren and Michelle Fogle were married. They are the natural parents of Skyla Fogle, born January 4, 1990. The parties separated in September 1990. Skyla has lived alternately with each of her parents since their separation.

Darren is currently unemployed and is supported by ADC. He lives with a girlfriend.

Michelle is also unemployed and lives with her boyfriend in Knoxville. Michelle has another daughter from a subsequent relationship.

On October 31, 1990, Darren filed a petition for dissolution of marriage. Thereafter, the district court filed an order for temporary custody which designated Darren as Skyla's primary caretaker subject to reasonable visitation by Michelle. The matter proceeded to trial.

After trial, the district court gave temporary custody of Skyla to Michelle. On March 20, 1992, the court entered its findings of fact, conclusions of law and decree. This decree was full of disparaging remarks concerning both Darren and Michelle. For example, the decree described Darren as an "ignorant, dull-witted, lazy, inarticulate, unmotivated, thick-headed, moron of a man," and stated that Michelle was not much better. The decree also stated that while neither party was a proper custodian of the child, Skyla's long-range interest would best be served by placing primary physical custody with Michelle so that Skyla could be with her half-sister, Samantha. On April 8, 1992, Darren filed his notice of appeal.

On April 10, 1992, the district court filed a substitute decree. This second decree did not contain any substantive changes from the original decree. However, it omitted the disparaging remarks. Darren did not appeal from the April 10 decree.

On April 15, 1992, Darren filed an application for stay of the March 20 trial court decree in the supreme court. Darren sought only to stay the custody, visitation and child support provisions of the decree. After a hearing, the supreme court (Lavorato, J.) stayed the March 20 decree per Darren's request.

### Scope of Review

In this equity action, our scope of review is de novo. Iowa R.App.P. 4. We give weight to the findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

### Discussion

■ The chief concern on appeal is the physical care of the parties' daughter, Skyla. Darren contends he is better able to care for her. He cites the report of Tom Lazio and Skyla's current residence with him as support for his contention. He also claims the trial court erred in giving great weight to the subsequent birth of Skyla's half-sister to Michelle. Michelle contends she is better able to serve Skyla's long-range best interest. She also notes two incidents in which Darren denied her visitation despite the court's temporary visitation order.

The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3) (1991) and In re Marriage of Weidner, 338 N.W.2d 351, 356 (Iowa 1983). All factors bear on the first and governing consideration, the court's determination of what will be in the long-term best interests of the child. In re Marriage of Lundtvedt, 484 N.W.2d 613, 615 (Iowa App.1992), citing In re Marriage of Vrban, 359 N.W.2d 420, 424 (Iowa 1984). In addition, the court shall consider the denial by one parent of the other parent's opportunity for maximum contact a significant factor when determining the proper custody

arrangement. *See* Iowa Code § 598.41(1) (1991). The court also emphasizes the importance of keeping siblings together, even if they are half-siblings. *In re Marriage of Orte,* 389 N.W.2d 373, 374 (Iowa 1986).

With these principles in mind, we turn to the issue of Skyla's physical care. Prior to the court's award of temporary custody of Skyla to Darren, Michelle was the chief care provider. Throughout the proceedings, Michelle maintained consistent contact with her and exercised all visitation rights, except on two occasions when Darren denied her those rights. The record indicates Michelle would promote and encourage an ongoing relationship between Skyla and her father. The record also indicates Michelle would encourage Skyla's relationship with her paternal grandparents. In addition, Skyla would likely benefit from establishing a close association with her half-sister. While the Home Study Report recommended physical care be provided by Darren, we are not persuaded by the reasoning of the author. The chief reason provided was the lack of stability and presence of abuse in Michelle's childhood home. The report indicated Michelle was sensitive to Skyla's needs, aware of her development, and was a creative homemaker, given her limited financial resources. There were no founded reports of child abuse of Skyla by Michelle. Michelle's childhood home situation was not of her own making.

We will not deny a parent physical care of his or her own child based on the inadequacy of the parent's childhood home. We affirm the trial court's grant of physical care of Skyla to Michelle.

We recognize the trial court's reluctance to apply the Child Support Guidelines given that Darren has been unemployed since August 1989. However, we consider Darren's earning capacity and his responsibility to support his child. *See, e.g., In re Marriage of Powell,* 474 N.W.2d 531 (Iowa 1991); *In re Marriage of Anderson,* 400 N.W.2d 84, 86 (Iowa App.1986). We find Darren has the capacity to earn at least the minimum wage of $4.65 per hour for forty hours per week. With that capacity, his monthly salary would be approximately $700. Accordingly, we modify the trial court decree to require Darren to pay Michelle $149 per month in child support until Skyla is eighteen, completed high school or is self-supporting, whichever event occurs first.

**AFFIRMED AS MODIFIED.**