# IN THE COURT OF APPEALS OF IOWA

No. 21-0958
Filed March 30, 2022


IN RE THE MARRIAGE OF KYLE MAHONEY AND TAMARA MAHONEY

**Upon the Petition of**
**KYLE MAHONEY,**
 Petitioner-Appellant,

**And Concerning**
**TAMARA MAHONEY,**
 Respondent-Appellee.
_____

  Appeal from the Iowa District Court for Johnson County, Kevin McKeever,

Judge.


  Kyle Mahoney appeals a temporary child support order. **REVERSED AND**

**REMANDED.**


  Alexander S. Momany and Mark D. Fisher of Howes Law Firm, P.C., Cedar

Rapids, for appellant.

  Matthew J. Adam and Rae M. Kinkead of Simmons Perrine Moyer Bergman

PLC, Cedar Rapids, for appellee.


  Considered by Tabor, P.J., May, J., and Danilson, S.J.*

  *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**DANILSON, Senior Judge.**

Kyle Mahoney appeals a temporary child support order, contending the district court erred in "adopting Tamara [Mahoney]'s calculations" regarding the amount of his income "without any written findings or explanation as to how this amount was appropriate or necessary to do justice between the parties." Upon our review, we reverse and remand for the court to consider whether it is appropriate to find the guidelines amount would be "unjust or inappropriate" under the child support guidelines set forth in Iowa Court Rule 9.11, which became effective January 1, 2022.

## I.    *Background Facts and Proceedings*

Kyle and Tamara married in 2010. In 2021, Kyle filed a petition for dissolution of marriage. Tamara filed an application for temporary custody, visitation, and support regarding their two minor children.

The parties filed affidavits and child support guidelines worksheets setting forth their income. Tamara is a senior financial analyst with Transamerica, and she set forth her income as $112,500.[1] Kyle is self-employed and the sole owner of Mahoney Insurance Company (MIC Inc.). He set forth his income as $110,391, stating that MIC Inc.'s tax return for 2019 shows "[h]e received $30,000 in distributions which are W-2 income; $44,891 in ordinary business income; and $35,500 paid to he and [Tamara] for rent of the home for corporate meetings." But Tamara set forth Kyle's income as $207,876, claiming, "Kyle is grossly understating his income from the business," and pointing to examples of various

---

[1] Although Kyle set forth Tamara's income as $101,746, he does not dispute the court's finding as to Tamara's income.

personal expenses to show that "Kyle and his accountant are very aggressive in claiming expenses to reduce his tax liability and understate his income."

The court entered its temporary order in May 2021. At the outset, the court stated "it is in the best interest of the children to have primary care awarded to [Tamara] with liberal visitation to be awarded to [Kyle]." The court found Kyle's annual income to be $208,000 and Tamara's annual income to be $112,000, and ordered:

> [Kyle] shall pay to [Tamara] child support in the amount of $1956.67 per month, which is consistent with the child support guidelines. Support payments shall be paid on the 15th day of the month each month beginning on June 15th, 2021. When only one child is eligible, the support payments shall be reduced to $1403.81.

Kyle filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), "request[ing] that the court make findings of fact as to how it reached the income numbers used for child support, reconsider child support to be consistent with Kyle's actual income, and enter appropriate orders." The court entered an order denying Kyle's motion, stating in relevant part:

> At the time of the temporary hearing, the issues of visitation, custody, and support were fully argued and affidavits and other supporting documents were provided to the Court. The Court listened carefully to the arguments of the attorneys regarding income, visitation, support and custody and reached the conclusion that shared care was not in the best interest of the children. Furthermore, the Court listened carefully to the arguments regarding the parties' income. The Court entered child support orders consistent with the evidence it found to be most credible regarding the income of the parties.

Kyle appealed the issue of child support.[2]

---

[2] Kyle notes that he also "disagrees with the physical care determination and care schedule," but he acknowledges those issues are not final orders that are appealable as a matter of right. *See, e.g., In re Marriage of Denly,* 590 N.W.2d 48,

## II.    *Standard of Review*

Review of dissolution cases is de novo.  Iowa R. App. 6.907; *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 483-84 (Iowa 2012).  While we give weight to the factual findings of the district court, especially when considering the credibility of witnesses, we are not bound by them.  Iowa R. App. P. 6.904(3)(g); *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007).  We examine the entire record and determine anew the issues properly presented.  *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005).  "[W]e accord the trial court considerable latitude in resolving disputed claims and will disturb a ruling 'only when there has been a failure to do equity.'"  *In re Marriage of Smith*, 573 N.W.2d 924, 926 (Iowa 1998) (citation omitted).

## III.    *Calculation of Kyle's Income*

Kyle contends the district court erred in "adopting Tamara's calculations" regarding the amount of his income "without any written findings or explanation as to how this amount was appropriate or necessary to do justice between the parties."  Kyle cites case law regarding imputation of income and when it is appropriate to use earning capacity rather than actual earnings, neither of which the court did in this case.  Kyle also challenges the court's failure to make a "written determination" to explain a deviation from the child support guidelines.

In other words, Kyle's challenge is to the court's determination of the amount of his annual income.  He points to the "precise information" he provided

---

51 (Iowa 1999) ("Temporary custody orders are not final judgments appealable as a matter of right, but rather are interlocutory orders from which permission to appeal must be obtained from our court.").

"for his sources and calculations of income"; specifically, "$30,000 in distributions from his business as W-2 income, $44,891 as ordinary business income, and $35,500 paid through his company for rental of his home for corporate meetings." True, this information was substantiated by attachments to Kyle's child support guidelines worksheets.

But Tamara disputed Kyle's information, claiming, "Kyle's 2019 1120-S MIC Inc. Tax Return for the fiscal year 10/1/2019–09/30/2020 attached to his affidavit shows the aggressive deductions . . . and it also includes . . . creative accounting." As Tamara argues, "This case [involves] a determination the expenses deducted by Kyle to reduce the taxable income of MIC are not reasonable business expenses for purposes of child support." *Cf.* Iowa Ct. R. 9.5(1)(c) ("Gross income from self-employment is self-employment gross income less reasonable business expenses."). For example, Tamara points to expenses of $38,000 and $15,000 for home rental; $4800 for "boat and pool rental"; $1200 for "golf membership"; $3000 for "home internet and cable"; $3000 for "family cell phone"; $3000 for "lodging for personal trips"; $2000 for "marketing pictures"; $13,000 for "per diem incidental 12+ hours"; $24,000 for "mileage"; $5000 for meals; $2500 for "entertainment"; $6000 for "office supplies"; and $30,000 for "office rental." Tamara also notes that MIC Inc.'s 2019 tax return shows a "total income" in excess of $300,000.

"In calculating child support, the first step is to determine the parents' current monthly net income from the most reliable evidence presented." *In re Marriage of Knickerbocker*, 601 N.W.2d 48, 51 (Iowa 1999). "This often requires the court to carefully consider all of the circumstances relating to the parent's

income." *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991). "Income is 'not limited to income that is reportable to the federal government as income.'" *In re Marriage of Wade*, 780 N.W.2d 563, 566 (Iowa Ct. App. 2010) (quoting *In re Marriage of Hilmo*, 623 N.W.2d 809, 811 (Iowa 2001)). "[H]owever, 'the definition of net monthly income does not encompass adding employment benefits to other income,' such as the personal use of a company vehicle." *Id.* (quoting *In re Marriage of Huisman*, 532 N.W.2d 157, 159 (Iowa Ct. App. 1995)). "Rather, the value of the [personal expenses] may be a factor that justifies an upward deviation from the amount of support provided in the guidelines." *Id.*

Here, Kyle is the sole shareholder of MIC Inc. "Generally, 'a corporation, even if owned by one person, is deemed a distinct entity.'" *Id.* (quoting *In re Marriage of Murray*, 213 N.W.2d 657, 660 (Iowa 1973)). Deviation from the guidelines can be appropriate in this type of context because "[i]t is not uncommon for an owner to cover many normal personal living expenses through the corporation, [which] would decrease profits while increasing the owner's standard of living." *Id.* (quoting *In re Marriage of Wiedemann*, 402 N.W.2d 744, 747 (Iowa 1987)).

Although the district court found Tamara's "evidence" regarding Kyle's use of corporate expense payments to cover his personal expenses to be "credible," the court "erred in calculating [Kyle]'s net income by adding in the value of the personal portion of the corporate payments." *See id.* at 367 (observing "corporate payment of personal expenses should not be automatically added dollar for dollar to the mathematical determination of gross income"); *Huisman*, 532 N.W.2d at 159 (noting "the definition of net monthly income does not encompass adding

employment benefits to other income prior to applying the guideline percentages");  *but see In re Marriage of Mace*, No. 02-2112, 2003 WL 23005295, at *2 (Iowa Ct. App. Dec. 24, 2003) (affirming the district court's "extracting the surplus cash and adding it to [the father's] income before applying the child support guidelines" where he "receive[d] payments, which throughout the marriage yielded a cash surplus over actual, reimbursable expenses").  Rather, "[t]hese factors/benefits 'can support a discretionary call by the trial court to depart from the guideline amount.'"  *Wade*, 780 N.W.2d at 567 (quoting *Huisman*, 532 N.W.2d at 159).  "This is particularly true when 'absent the benefit, the noncustodial parent would need to purchase the employee benefit in the market place.'"  *Id.* (quoting *Huisman*, 532 N.W.2d at 159).

On remand, the district court may conclude Kyle, "as a corporate owner, has covered many normal personal living expenses through the corporation," [and] "equity requires the recognition of the value of corporation-paid personal expenses as a factor that could justify a deviation from the amount of support provided in the guidelines." *See id.*  Accordingly, we reverse and remand for the court to consider, with written findings,  whether it is appropriate to find the guidelines amount would be "unjust or inappropriate" under the new child support guidelines set forth in Iowa Court Rule 9.11, which became effective January 1, 2022.

## IV. *Appellate Attorney Fees*

Tamara requests an award of $3000 in appellate attorney fees.  An award of appellate attorney fees is not a matter of right but rests within this court's discretion, upon consideration of the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was

obligated to defend the district court's decision on appeal. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Upon consideration of these factors, we decline Tamara's request for appellate attorney fees. Costs of appeal are taxed to both parties in equal shares.

**REVERSED AND REMANDED.**